IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LISA R. RHODES,**
**Claimant Below, Petitioner**

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-279**      (JCN: 2022004339)

**GO-MART, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Lisa R. Rhodes appeals the June 6, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Go-Mart, Inc. ("Go-Mart") filed a timely response.[1] Ms. Rhodes did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders, which denied the addition of lumbar radiculopathy and lumbar degenerative disc disease as compensable conditions; and denied authorization for Gabapentin, Tizanidine, Hydrochloride, and Ibuprofen.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 31, 2021, while employed by Go-Mart, Ms. Rhodes felt a pop in her back while she was moving items through the store. The claim was held compensable for lumbar sprain.[2] Ms. Rhodes had an extensive history of back pain, and she had received treatment for back pain since at least 2014. A medical record from 2019 indicates that Ms. Rhodes took Ibuprofen for her pain symptoms. Also in 2019, Ms. Rhodes complained of pain radiating down her legs. An MRI of Ms. Rhodes' lower back was performed on April 21, 2020, revealing L4-L5 bilateral neural foraminal small disc herniations, greater on the left; L4-L5 central canal stenosis due to facet joint hypertrophy; degenerative disc disease at L5-S1; and severe facet joint disease at L5-S1, worse on the right. In November 2020, Ms. Rhodes was diagnosed with both multilevel degenerative lumbar disc disease and lumbar radiculopathy, physical therapy was recommended.

---

[1] Ms. Rhodes is represented by Patrick K. Maroney, Esq. Go-Mart is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

[2] The initial compensability order was not included in either party's appendix.

Christina Gillenwater, M.D., has treated Ms. Rhodes since 2016 for leg pain, hip pain, and back pain. On January 7, 2021, Dr. Gillenwater indicated that Ms. Rhodes had been scheduled for a spinal injection, but that was canceled due to COVID-19. On January 14, 2021, an EMG was performed on Ms. Rhodes, revealing lumbar radiculopathy at L5 or S1. On July 9, 2021, Ms. Rhodes reported to Dr. Gillenwater that her back hurt so much that she was considering retiring and she stated that she takes Ibuprofen every day.

Ms. Rhodes was seen by Richard G. Bowman, M.D., from January 2021 to August 2021. She reported back pain that radiated down her legs. Dr. Bowman diagnosed Ms. Rhodes with lumbar radiculopathy. On March 30, 2021, Dr. Bowman performed a transforaminal epidural steroid injection on Ms. Rhodes. She reported that her pain continued after the injection.

On September 21, 2021, following the compensable injury, Ms. Rhodes underwent a second MRI of her lower back, revealing severe central canal stenosis at L4-L5, with severe left exit foraminal narrowing and moderate right exit foraminal narrowing at that level; foraminal extension of protrusion touched the L4 nerve root sleeves bilaterally, worse on the right, correlating with right L4 radiculopathy; a mass effect upon the right S1 nerve root sleeve, due to an enlarged right L5-Sl facet; right lower extremity S1 radiculopathy; and severe degenerative endplate changes at L5-Sl. Ms. Rhodes underwent physical therapy from October 15, 2021, to December 2, 2021. She indicated that the physical therapy made her symptoms worse.

Rebecca Thaxton, M.D., issued a report dated November 2, 2021, after performing a medical record review.[3] Dr. Thaxton opined that Ms. Rhodes' symptoms pre-dated the claim and noted that, prior to the work injury, she underwent transforaminal epidural steroid injections in March 2021.[4]

On January 13, 2022, Dr. Gillenwater submitted a Diagnosis Update form, requesting that lumbar radiculopathy and degeneration of lumbar intervertebral disc be added to the claim as compensable conditions. James Dauphin, M.D., performed a medical records review and issued a report dated February 23, 2022. Dr. Dauphin opined that lumbar radiculopathy and degenerative disc disease preexisted the compensable injury. Dr. Dauphin found no indication that the compensable injury aggravated or worsened the preexisting condition as Ms. Rhodes' symptoms prior to the compensable injury and after were similar. Ultimately, Dr. Dauphin recommended that lumbar radiculopathy and

---

[3] This record review was performed to determine whether a request for a right L5 transforaminal epidural steroid injection that was requested on October 27, 2021, should be authorized. This request for authorization was not included in either party's appendix.

[4] It is assumed that the claim administrator denied authorization for this request, however, that order also has not been included in either party's appendix.

degenerative lumbar disc disease should not be added to the claim as compensable conditions.

Ms. Rhodes was seen by Scott Rainey, D.O., who issued a report dated April 12, 2022. Dr. Rainey opined that Ms. Rhodes suffered a lower back sprain as a result of the compensable injury. Dr. Rainey noted that Ms. Rhodes' documented symptoms following the compensable injury were similar to her symptoms prior to the compensable injury. Dr. Rainey also noted that the results of the imaging studies performed after the injury were similar to those of the imaging studies prior to the injury, as both revealed severe degenerative changes and spinal stenosis. Dr. Rainey opined that there was no evidence of material change, structural damage, or alteration to Ms. Rhodes' lumbar spine occurring as a result of her August 31, 2021, work injury.

On April 6, 2022, the claim administrator issued an order denying the addition of lumbar radiculopathy and degenerative lumbar disc disease to the claim as compensable diagnoses. The claim administrator issued a second order dated September 29, 2022, denying Ms. Rhodes request for authorization of Gabapentin, Tizanidine, Hydrochloride, and Ibuprofen.

On June 6, 2023, the Board issued an order affirming the claim administrator's orders which denied the addition of lumbar radiculopathy and lumbar degenerative disc disease as compensable conditions, and denied authorization for Gabapentin, Tizanidine, Hydrochloride, and Ibuprofen. The Board found that Ms. Rhodes failed to establish that lumbar radiculopathy and degenerative lumbar disc disease were causally related to the compensable injury. The Board further found that Ms. Rhodes failed to establish that the requested treatment of Gabapentin, Tizanidine, Hydrochloride, and Ibuprofen is medically necessary and reasonably related to the compensable injury. Ms. Rhodes now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;

3

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Ms. Rhodes argues that her repetitive motions involved in lifting, moving, and stacking boxes at work caused her lumbar radiculopathy and degenerative lumbar disc disease. Ms. Rhodes further argues that her compensable injury exacerbated her preexisting lumbar radiculopathy and degenerative lumbar disc disease. Ms. Rhodes additionally argues that the requested medications were initially authorized and, further, are reasonable to treat her compensable condition. We disagree.

In *Gill v. City of Charleston*, 236 W.Va. 737, 783 S.E.2d 857 (2016), the Supreme Court of Appeals of West Virginia held:

[a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Gill* at 738, 783 S.E.2d at 858, syl. pt. 3.

In *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022), the Supreme Court clarified its position, holding, "[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards." *Moore* at 294, 879 S.E.2d at 781, syl. pt. 5.

Further, this Court held in *Blackhawk Mining, LLC, v. Argabright*, No. 22-ICA-262, 2023 WL 3167476, at *3 (Ct. App. May 1, 2023), that although a preexisting injury may be aggravated or exacerbated by a discrete new injury, the preexisting injury itself does not become a compensable injury; only the discrete new injury can be held compensable.

Here, the Board found that Ms. Rhodes failed to establish that lumbar radiculopathy and degenerative lumbar disc disease were causally related to her compensable injury. The Board noted that Ms. Rhodes had an extensive history of back pain and had been diagnosed with both lumbar radiculopathy and degenerative lumbar disc disease prior to the compensable injury. The Board further found that, in regard to lumbar radiculopathy and

degenerative lumbar disc disease, the presumption set forth in *Moore* had been rebutted by Ms. Rhodes' extensive history of symptomatic preexisting conditions. Regarding the request for authorization of Gabapentin, Tizanidine, Hydrochloride, and Ibuprofen, the Board found that no medical evidence was submitted that would establish that the request was medically necessary and reasonably related to the compensable injury.

Upon review, we conclude that the Board was not clearly wrong in finding that Ms. Rhodes failed to establish that her preexisting lumbar radiculopathy and degenerative lumbar disc disease were causally related to her compensable injury. Further, we find that the Board was not clearly wrong in finding that the presumption set forth in *Moore* had been rebutted in this case, as Ms. Rhodes has suffered from documented preexisting back pain, and she was diagnosed with lumbar radiculopathy and degenerative lumbar disc disease prior to the compensable injury. The Board was also not clearly wrong in determining that Ms. Rhodes failed to establish that the requested treatments were medically necessary and reasonably related to the compensable injury.

Finally, Ms. Rhodes' argument that her preexisting lumbar radiculopathy and degenerative disc disease were exacerbated by the injury and repetitive motions associated with her job duties, is without merit. Any determination that the conditions were caused by repetitive motions would be inconsistent with the basis of this claim, which was filed as the result of an isolated fortuitous event occurring on August 31, 2021. Although she could have filed a separate claim based on an allegation of a repetitive motion injury, repetitive motion did not form the basis of the present claim.

Accordingly, we affirm the Board's June 6, 2023, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen


Judge Thomas E. Scarr, not participating.

5